IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCISCO AVILA and MARTHA AVILA, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:16-cv-3007-L |
| METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS, ET AL., | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Francisco Avila and Martha Avila ("Plaintiffs" or "the Avilas") filed an

Opposed Motion to Remand, *see* Dkt. No. 6, to which Defendants Metropolitan Lloyds

Insurance Company of Texas ("Metropolitan"), Metlife Auto & Home Insurance Agency,

Inc. ("Metlife"), Tailored Adjustment Services, Inc. ("Tailored"), Patrick Thomas

("Thomas"), and Matthew Congleton ("Congleton"; collectively, "Defendants") filed a

response, *see* Dkt. No. 8. Plaintiffs have not filed a reply, and their deadline to do so

has passed.

United States District Judge Sam A. Lindsay referred this motion to the

undersigned United States magistrate judge for findings and recommendation under

28 U.S.C. § 636(b). *See* Dkt. No. 7.

The undersigned now concludes that Plaintiffs' motion should be granted for the

reasons explained below.

-1-

## Background

On September 9, 2016, the Avilas initiated this lawsuit by filing their Original Petition in County Court at Law No. 2, Kaufman County, Texas.

The Avilas allege that a storm caused damage to their home and that each of the Defendants had some role in causing their insurer, Metropolitan, to underpay their claim.

The Avilas contend that Metropolitan assigned Metlife and/or Tailored to adjust the claim and that Metlife and/or Tailored then assigned Thomas and Congleton as the individual adjusters on the claim.

Thomas and Congleton allegedly "failed to perform a thorough and reasonable investigation of Plaintiffs' claim," Dkt. No. 1-1 at 6, and Metropolitan "failed to thoroughly review and properly oversee the work of the assigned claims representatives and adjusters," *id.* at 7. "Metropolitan, Metlife, Tailored, Thomas, and Congleton [also allegedly] misrepresented that Plaintiffs' damages were not covered under [their] Policy, when the losses, in fact, were properly covered damages." *Id.*

The Avilas now assert claims against Metropolitan for breach of contract, unfair settlement practices in violation of the Texas Insurance Code, noncompliance under prompt payment of claims, breach of the duty of good faith and fair dealing, conspiracy to commit fraud, and fraud. They also assert claims against MetLife, Tailored, Thomas, and Congleton for unfair settlement practices, fraud, and conspiracy to commit fraud.

Metropolitan removed the case to federal court based solely on diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1. It contends that complete

diversity exists because "Plaintiffs are now, and were at the time the lawsuit was filed, residents of the State of Texas," and "Defendant Metropolitan is now, and was at the time the action was commenced, an unincorporated association of underwriters whose individual underwriters ... are not residents or citizens of Texas." *Id.* at 2. It acknowledges that Tailored, Thomas, and Congleton (collectively, the "Non-Diverse Defendants") are citizens of Texas but insists that their citizenship "should not be taken into consideration for purposes of determining diversity as they have been improperly joined in this action." *Id.* at 3. Metropolitan further alleges that "MetLife Auto & Home has no citizenship. Rather[,] this entity is a trade name for Metropolitan Property and Casualty Company, which has not been named, sued, or served as an independent party." *Id.* at 2-3. The Avilas do not dispute this contention.

The Avilas filed their Opposed Motion to Remand shortly after removal. *See* Dkt. No. 6. They argue that "complete diversity is lacking" and insist that they have properly asserted claims against the Non-Diverse Defendants in this action. Dkt. No. 6-1 at 2.

Defendants' response reiterates and expands on the reasoning in Metropolitan's Notice of Removal.

The Court should grant Plaintiffs' Opposed Motion to Remand [Dkt. No. 6] for the reasons explained below.

## Legal Standards

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. §

1441(a). A federal court's jurisdiction is limited, and federal courts generally may hear only a case of this nature if it involves a question of federal law or where diversity of citizenship exists between the parties. *See id.* §§ 1331, 1332. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* § 1447(c).

When determining if it has federal jurisdiction, the Court focuses on the plaintiff's pleadings "as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). But the Court "may be required to survey the entire record … and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts." *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992). Statutes that authorize removal are meant to be strictly construed. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). Any "ambiguities are construed against removal," and "[t]he removing party bears the burden of showing that federal jurisdiction exists." *Manguno*, 276 F.3d, at 723.

In diversity cases under 28 U.S.C. § 1332, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000.00. *See* 28 U.S.C. § 1332(a). Failure to allege adequately the basis of diversity requires remand. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). If no amount of damages has been alleged in the state court petition, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the

jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). And the Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Further, an action may not be removed on the basis of diversity jurisdiction if any defendant, properly joined and served, is a citizen of the state where the plaintiff filed suit. *See* 28 U.S.C. § 1441(b)(2). Failure to comply with this requirement renders the removal defective. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009) (removal of case in violation of forum-defendant rule is defective).

Likewise, based on the so-called rule of unanimity, if an action is removed under Section 1441(a) based on diversity jurisdiction, "all defendants who have been properly joined and served must join in or consent to the removal of the action"; "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal"; and, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(A)-(C). But, if a case is removed under Section 1441(c) based on federal question jurisdiction over a claim, "only defendants against whom [a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of

28 U.S.C. § 1331)] has been asserted are required to join in or consent to the removal under" Section 1441(c)(1). *Id.* § 1441(c)(2).

As is the case here, a defendant alleging improper joinder has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc) (describing the "heavy burden" on the party asserting improper joinder and noting that, "until the removing party does so, the court does not have the authority to do more" and "lacks the jurisdiction to dismiss the case on its merits").

Under the second prong, which Defendants invoke in this action, the standard is whether the defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the non-diverse defendant. *See Smallwood*, 385 F.3d at 573. Ordinarily, the court must conduct a Federal Rule of Civil Procedure 12(b)(6)-type analysis, examining the allegations in the complaint to determine whether the plaintiff has stated a claim against the non-diverse defendants. *See Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* But the United States Court of Appeals for the Fifth Circuit has "caution[ed] that a summary inquiry

is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant." *Smallwood*, 385 F.3d at 573-74.

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a nondiverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347). And the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

-9-

particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice")

## Analysis

Metropolitan removed this action to federal court based solely on Section 1332(a) diversity jurisdiction. Diversity jurisdiction exists where the amount in controversy exceeds $75,000.00 and each plaintiff's citizenship is diverse from each defendant's citizenship. 28 U.S.C. § 1332(a).

The amount-in-controversy has been satisfied in this action. In their Original Complaint, Plaintiffs seek to recover damages from Defendants in excess of $100,000.00 in this action. *See* Dkt. No. 1-1.

But the parties dispute whether "each plaintiff's citizenship is diverse from each defendant's citizenship." 28 U.S.C. § 1332(a). Plaintiffs insist that "complete diversity is lacking because Plaintiffs are Texas citizens as are the [Non-Diverse Defendants]." Dkt. No. 6 at 3. Metropolitan counters that the Non-Diverse Defendants' "citizenship ... should not be taken into consideration for purposes of determining diversity as they have been improperly joined in this action." Dkt. No. 1 at 3.

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood*, 385 F.3d at 576. A defendant can meet this burden by demonstrating that the plaintiff either (1) committed "actual fraud in the pleading of jurisdictional facts," or (2) is unable "to establish a cause of action against the non-diverse party in state court." *Crockett*, 436

-10-

F.3d at 532 (internal quotation marks omitted).

There is no dispute or allegation of actual fraud concerning the fact that Plaintiff and the Non-Diverse Defendants are citizens of Texas. The sole concern in this case, then, is whether Plaintiff has alleged a valid state-law cause of action against the Non-Diverse Defendants.

The Fifth Circuit has explained that "the procedure for determining whether, in the absence of actual fraud, a nondiverse defendant was improperly joined" consists of two steps. *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016). "First, a court looks at the allegations contained in the complaint. If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder." *Id.* (internal citations omitted). In making this determination, the undersigned will "'evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff'" and "'then examine the relevant state law and resolve all uncertainties in favor of the nonremoving party.'" *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983)).

"When a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder ... The district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" *Mumfrey*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *Smallwood*, 385 F.3d at 573). "The

purpose of the inquiry is limited to identifying 'the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant.'" *Id.* (quoting *Smallwood*, 383 F.3d at 573). If the court elects to "pierce the pleadings and conduct a summary inquiry," "the burden remains with the defendant" to demonstrate that there is no possibility of recovery. *See id.* at 401-02.

The Avilas have brought claims against the Non-Diverse Defendants for unfair settlement practices, fraud, and conspiracy to commit fraud.

In the conclusion of their brief, Defendants argue (for the first time) that "[t]he modern trend is for ... courts to more carefully analyze the pleading requirements in order to negate pleadings purposefully designed to defeat federal court jurisdiction." Dkt. No. 8 at 9. To support this contention, Defendants cite a list of cases where "the court held that the insurer adjuster or representative was improperly joined" and that allegedly show that "[f]ederal courts recognize the propensity for policyholder attorneys" to improperly join insurance adjusters to avoid removal. *Id.* at 8 n.1 (citing *Studer v. State Farm Lloyds*, No. 4:13-cv-413, 2014 WL 234352 (E.D. Tex. Jan. 21, 2014); *Yeldell v. GeoVera Specialty Ins. Co.*, No. 3:12-cv-1908-M, 2012 WL 5451822 (N.D. Tex. Nov. 8, 2012); *Moore v. Travelers Indem. Co.*, No. 3:10-cv-1695-D, 2010 WL 5071036 (N.D. Tex. Dec. 7, 2010), among others).

The undersigned disagrees and shall liberally construe all facts in favor of the Avilas as the parties challenging the removal, as explained above. The cases in which Defendants cite each confirm the several principles supporting this conclusion. These

include the principles that:

> 1. "The party seeking removal 'bears the burden of establishing that federal jurisdiction exists and that removal was proper.'" *Studer*, 2014 WL 234352, at *2 (quoting *Manguno*, 276 F.3d at 723).

> 2. "Doubts about the propriety of removal are to be resolved in favor of remand." *Yeldell*, 2012 WL 5451822, at *1 (citing *Manguno*, 276 F.3d at 723).

> 3. "'[T]he removing party has ... [a] heavy burden of proving that joinder was improper.'" *Moore*, 2010 WL 5071036, at *3 (quoting *Smallwood*, 385 F.3d at 573).

> 4. "The court need only determine that a plaintiff might possibly prevail to conclude joinder was proper." *Id.* (citing *Cantor v. Wachovia Mortg.*, *FSB*, 641 F. Supp. 2d 602, 607 (N.D. Tex. 2009)). "To do so, the court 'evaluate[s] all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Id.* (internal citations omitted; quoting *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)).

These cases do not suggest that courts are to scrutinize Plaintiffs' pleadings any more than required to show that "a plaintiff might possibly prevail" on at least one cause of action against at least one of the non-diverse parties. *Id.*

I.    Texas's Economic Loss Rule does not preclude the Avilas from asserting their claims against the Non-Diverse Defendants.

Defendants contend that "the purposed misconduct resulted in damages which are only compensable under the insurance contract and does not support an independent claim against these Defendants." Dkt. No. 8 at 8.

Defendants have not cited to any authority supporting this position, and it is not apparent what basis Defendants have for this contention.

Defendants may have intended to invoke Texas's Economic Loss Rule. The

Economic Loss Rule "reflects a preference for allocating some economic risks by contract rather than by law." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). "The rule [generally] restricts contracting parties to recover contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007) (quoting *Jim Walter Homes v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). Accordingly, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. Denied); *accord Jim Walter*, 711 S.W.2d at 618.

But "the rule is not generally applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles." *LAN/STV*, 435 S.W.3d at 235-36. "[I]f a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (citing *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). A plaintiff's decision to invoke these duties in a tort claim does not appear to change this analysis. *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x. 790, 795 (5th Cir. 2014) (briefly observing that the loan servicer's duties to a mortgagor derived from statutes on which the mortgagor based

-14-

his other claims before concluding that the borrower's negligence claim failed because "our grounds for affirming the district court as to the statutory claims apply equally here").

The Economic Loss Rule does not bar Plaintiffs' claims for Section 541.060 violations. Plaintiffs' claims that the Non-Diverse Defendants violated Section 541.060 are necessarily based on their duty to act pursuant to that statute. As such, the Avilas' claims are based on duties that are independent from their insurance contract. *See McCaig*, 788 F.3d at 475 (explaining that "[a] statutory offender will not be shielded from liability simply by showing its violation also violated a contract").

Further, the Avilas seek "extra-contractual damages caused by the Non-Diverse Defendants." *Flores v. Allstate Insurance Company*, No. 1:13-cv-613, 2014 WL 12591936, at *6 (E.D. Tex. Feb. 24, 2014). These include damages for mental anguish, and treble damages under Texas Insurance Code § 541.152. *See id.* (finding that the rule did not preclude Section 541.060 claims because plaintiff sought damages for mental anguish); *Breitling v. LNV Corporation*, No. 3:15-cv-703-B, 2015 WL 5896131, at *4 (N.D. Tex. Oct. 5, 2015) (finding that the rule does not preclude Texas Debt Collection Act ("TDCA") claims, in part, because "a party who succeeds in an action under this section of the TDCA is entitled to statutory damages (i.e., damages beyond the subject matter of the contract")).

The Economic Loss Rule thus does not bar the Avilas' Section 541.060 claims against the Non-Diverse Defendants.

The same is true with respect to Plaintiffs' claims for fraud or conspiracy to commit fraud. Several courts have held that the Economic Loss Rule does not apply to fraud claims. *See Hurd v. BAC Home Loans Servicing, LP*, 800 F. Supp. 2d 747, 764 (N.D. Tex. 2012) (collecting cases). These courts reason that a contract between the parties generally "do[es] not create a duty to refrain from" making "knowing" misrepresentations. *Cardinal Health Solutions, Inc. v. Valley Baptist Medical Center*, No. 1:07-cv-111, 2009 WL 150942, at *19 (S.D. Tex. Jan. 21, 2009). "This duty is imposed by the common law of Texas." *Id.; accord Formosa*, 960 S.W.2d at 46 (noting that "[the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud.").

The Avilas also seek extra-contractual damages for their fraud claims. This includes requests for exemplary damages for knowingly fraudulent and malicious representations." Dkt. No. 1-1 at 21; *see Flores*, 2014 WL 12591936, at *6 (finding that the rule did not preclude Section 541.060 claims because plaintiff sought damages for mental anguish).

The Economic Loss Rule therefore does not bar the Avilas' claims for fraud and conspiracy to commit fraud against the Non-Diverse Defendants.

II.   Policyholders can properly assert Section 541.060 claims against adjusters in their individual capacity.

By contending that the misconduct that Plaintiffs allege "does not support an independent claim against these Defendants," Defendants might have alternatively

meant to challenge Plaintiffs' ability to bring Section 541.060 claims against adjusters in their individual capacity. This argument is also unpersuasive.

"It is well settled under Texas law that an insurance [adjuster] cannot be held liable for breach of contract or breach of duty of good faith and fair dealing absent a contract giving rise to a 'special relationship' with the insured." *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643, 647 (S.D. Tex. 2002). This is because insurance adjusters are generally not "a party to any implied or express contract of any sort with [policyholders]," and because, "[i]n the insurance context, the duty of good faith and fair dealing arises only when there is a contract giving rise to a 'special relationship.'" *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) (quoting *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994)).

But this reasoning does not extend to the Avilas' claims for fraud, conspiracy to commit fraud, or for violations of Section 541.060(a) of the Texas Insurance Code. As explained above, fraud claims are not based on the duties that the parties may have with one another pursuant to a contract. These claims are, instead, based on an independent duty that exists in common law. *See Formosa*, 960 S.W.2d at 46 (noting that the Texas Supreme Court has "repeatedly recognized that a fraud claim can be based on a promise with no intention of performing, irrespective of whether the promise is later subsumed within a contract"). The Avilas can thus potentially succeed on their claims for fraud or conspiracy to commit fraud if properly pleaded.

And "[t]he Texas Supreme Court and the Fifth Circuit has recognized that

insurance adjusters can be individually liable for violating the Texas Insurance Code." *Exchange Services, Inc. v. Seneca Insurance Co., Inc.*, No. 3:15-cv-1873-M, 2015 WL 6163383, at *4 (N.D. Tex. Oct. 16, 2015) (citing *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998); *Gasch*, 491 F.3d at 283). Several lower courts have reached the same conclusion. *See id.* (collecting cases). These courts cite to the Texas Insurance Code's provisions to support their contention that adjusters can be sued in their individual capacity. The Texas Insurance Code provides that Texas Insurance Code "§ 541 should 'be liberally construed' to promote the purpose of prohibiting unfair or deceptive acts or practices among those in the business of insurance in the state." *Id.* (quoting TEX. INS. CODE § 541.008).

Accordingly, the Texas Insurance Code allows claimants to sue a "person" for engaging in any act or practice which the Code defines as "an unfair or deceptive act or practice in the business of insurance" and specifically refers to an "adjuster" as one such person. *Id.* (citing TEX. INS. CODE §§ 541.002, 541.151). This is likely because "'an insurance adjuster ... engages in the business of insurance by investigating, processing, evaluating, [and potentially] approving and denying claims.'" *Jones v. Ace American Ins. Co.*, No. 1:06-cv-616, 2006 WL 3826998, at *5 (E.D. Tex. Dec. 22, 2006) (quoting *Vargas*, 216 F. Supp. 2d at 648). "Moreover, 'an insurance adjuster's duties cannot properly be classified as merely clerical or janitorial,' as excepted from potential liability under the Insurance Code by the Texas Supreme Court." *Id.* (quoting *Vargas*, 216 F. Supp. 2d at 648).

The undersigned acknowledges that, as Defendants note, the insurer holds the ultimate authority over whether coverage is afforded to a particular claim. *See* Dkt. No. 8 at 8-9. But the Fifth Circuit has found that claimants can nevertheless sue adjusters in their individual capacity given the role adjusters necessarily play in the approval and denial process. The Fifth Circuit specifically observed that "'Texas law clearly authorizes [Chapter 541] actions against insurance adjusters in their individual capacities'" in light of the claimants' allegations that "their insurer, *through an adjuster*, 'denied their ... benefits claim even though liability was reasonably clear.'" *Exchange Services, Inc.*, 2015 WL 6163383, at *5 (quoting *Gasch*, 491 F.3d at 283).

Some judges in this district have found that it is not proper to bring a claim against adjusters to the extent that they are based on violations of Section 541.060(a)(2)(A). These judges reason that the argument that adjusters do not have settlement authority is uniquely persuasive with respect to these claims. After all, Section 541.060(a)(2)(A) holds persons liable for a failure to effectuate a settlement in good faith. *See Messersmith v. Nationwide Mut. Fire Ins.* Co., 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014); *One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-cv-2839-D, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11, 2014) (citing *Messersmith*, 10 F. Supp. 3d at 724).

But, as other judges in this court have observed, "such a reading unduly narrows the scope of the provision, as it renders the term 'effectuate' superfluous." *Roach v. Vehicle*, No. 3:15-cv-3228-G, 2016 WL 795967, at *5 (N.D. Tex. 2016). "Webster's Dictionary defines the word 'effectuate' by reference to the definition for 'effect,'

meaning 'to cause to come into being' or 'to bring about.' *Effectuate*, Merriam-Webster's Collegiate Dictionary 367-68 (10th ed. 1999). The Texas legislature's decision to use the word 'effectuate' instead of the word 'finalize' indicates that § 541.060(a)(2)'s 'prohibition extends to all persons who play a role in bringing about a prompt, fair, and equitable settlement of a claim.'" *Id.* (quoting *Denley Group, LLC v. Safeco Insurance Company of Indiana*, No. 3:15-cv-1183-B, 2015 WL 5836226, at *4 (N.D. Tex. Sept. 30, 2015)). Adjusters have such a role. "[I]t is upon [their] investigation that the insurance company's settlement of a claim is generally based." *See id.* (citing *Arana v. Allstate Texas Lloyds*, No. 3:13-cv-750-D, 2013 WL 214989, at *5 (N.D. Tex. May 17, 2013)).

Further, in the context of a motion to remand based on improper joinder, "the split in authority regarding the scope of an insurance adjuster's liability under the [Texas Insurance Code] must be resolved in favor of remand." *Id.* at *6 (citing *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014)). After all, "[t]he court need only determine that a plaintiff might possibly prevail to conclude joinder was proper." *Moore*, 2010 WL 5071036, at *4.

The undersigned thus concludes that, if properly pleaded, the Avilas can state their claims for violation of Section 541.060 against the Non-Diverse Defendants for their roles adjusting the claim.

III.    The Avilas' state court petition fails to state a claim for fraud or conspiracy to commit fraud.

As explained above, the Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a nondiverse

defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 200-01 (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead of the federal pleading standard). And the "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

To survive a Rule 12(b)(6) motion on a claim for fraud or conspiracy to commit fraud, plaintiffs typically must satisfy the heightened pleading standard articulated by Rule 9(b) of the Federal Rules of Civil Procedure. *See In re Enron Corp. Securities, Derivative and ERISA Litig.*, 623 F. Supp. 2d 798, 811 n.11 (S.D. Tex. 2009) (applying Rule 9(b) to a claim for conspiracy to commit fraud). "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 206 (5th Cir. 2009) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)).

The undersigned therefore assumes, without deciding, that Rule 9(b) will apply here, while acknowledging that it may not be appropriate to apply Rule 9(b) in light of the low threshold plaintiffs have to meet on a motion challenging diversity jurisdiction based on improper joinder. *See Mainali Corp. v. Covington Specialty Ins. Co.*, No. 3:15-cv-1087-D, 2015 WL 5098047, at *6 & n.3 (N.D. Tex. Aug. 31, 2015) (electing not to apply the standard in Rule 9(b) in a case decided before the Fifth Circuit clarified that the federal pleading standard applies to determine whether a

nondiverse defendant has been improperly joined).

Rule 9(b) requires that, "[i]n alleging fraud ..., a party must state with particularity the circumstances constituting fraud, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). This means that "the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "[A]t a minimum," the pleading should identify "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations and internal quotation marks omitted).

The Avilas' claims for fraud and conspiracy to commit fraud appear to be largely based on their assertion that Defendants knowingly or recklessly engaged in a scheme to underpay their claims. But the Avilas have not pleaded the allegations supporting this theory with the specificity that Rule 9(b) requires.

Beyond their allegation that "[o]n or about May 27, 2015, Thomas conducted a substandard inspection of Plaintiffs' property," Dkt. No. 1-1 at 6, the Avilas largely fail to identify precisely when any of the major allegations supporting their claim occurred or under what circumstances. The Avilas allege that Thomas made certain omissions and material misrepresentations in the damages report he prepared but do not identify when this report was prepared. The Avilas allege that Congleton ultimately approved and/or submitted Thomas' inaccurate report of the damage but do not identify when

he either approved or submitted the report, where this occurred, or to whom. And the Avilas allege that Defendants "misrepresented that Plaintiffs' damages were not covered under the Policy, when the losses, in fact, were properly covered damages," *id.*, but do not identify when or where these misrepresentations occurred.

These allegations are not sufficiently specific to state a claim for fraud and, as a result, conspiracy to commit fraud. This is because a "conspiracy-to-commit-fraud claim necessarily relies upon the pleadings of a viable fraud cause of action. Having failed to adequately plead a fraud claim, Plaintiff[s] ha[ve] also failed to adequately plead a conspiracy claim premised upon said alleged fraud claim." *Prabhjot, Inc. v. Western Heritage Insurance Co.*, No. 1:12-cv-202-C, 2013 WL 12123242, at *2 n.1 (N.D. Tex. Oct. 29, 2013).

IV.    The Avilas' state court petition also fails to state a claim for violations of Section 541.060(a)(4) of the Texas Insurance Code.

Section 541.060(a)(4) prohibits a person in the business of insurance from "failing within a reasonable time to [either] (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder." TEX. INS. CODE § 541.060(a)(4). The Avilas have put forth no factual allegations to support their contention they did not receive notice of the insurer's determination, a reservation of rights, or both within a "reasonable time." The Avilas, instead, merely rely on their conclusory allegation that Defendants did not "timely" provide these items. Dkt. No. 1-1 at 9. As such, the Avilas have failed to state a claim on this basis.

V.    But the Avilas do state a claim for the other Section 541.060(a) violations they allege, which is sufficient to remand the case.

The Avilas do not need to state a claim for every violation they have alleged. "[E]ven a single valid cause of action against [non-diverse] defendants, despite the pleading of several unavailing claims, requires remand of the entire case to state court." *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). The Avilas meet and exceed this threshold because they have stated claims based on multiple violations of Section 541.060(a)(1) – at least for purposes of this motion.

    A.    The Avilas' state court petition states a claim for Section 541.060(a)(1) of <u>the Texas Insurance Code.</u>

The Avilas claim that the Non-Diverse Defendants misrepresented "a material fact or policy provision relating to the coverage at issue," in violation of Section 541.060(a)(1) of the Texas Insurance Code. The Avilas cite to two misrepresentations to support this contention.

The first set of misrepresentations concern the evaluation Thomas conducted of the Property. The Avilas contend that Thomas violated Section 541.060(a)(1) by "fail[ing] to include all of [the] damages [that he had] noted" when he inspected their property "[o]n or about May 27, 2015" in his report. Dkt. No. 1-1 at 6. They further contend that Congleton is liable for these misrepresentations because he "failed to thoroughly review Thomas' assessment of the claim and ultimately approved and/or submitted Thomas' inaccurate report of damages," *id.* at 7, and that Thomas and Congleton "fail[ed] to provide an adequate explanation for the inadequate compensation Plaintiff received," *id.* at 13.

Judges in this Court have previously found that "such allegations do not fall

within the scope of this section of the Texas Insurance Code." *Thomas v. State Farm Lloyds*, No. 3:15-cv-1937-B, 2015 WL 6751130, at \*3 (N.D. Tex. Nov. 4, 2015) (citing *Minali Corp.*, 2015 WL 50898047, at \*4; *Messersmith*, 10 F. Supp. 3d at 724). This is because statements about whether a claim is factually within the policy's terms "do not constitute a misrepresentations of the policy itself," and therefore do not "relate[] to the coverage at issue." *Id.* "Here, the misrepresentation is not about the breadth or existence of coverage, it is about the facts that gave rise to a policy claim. This is not the type of misrepresentation that § 541.060(a)(1) protects against." *Messersmith*, 10 F. Supp. at 724.

But the Avilas do not solely rely on this set of misrepresentations to support this claim. They also contend that "Tailored, Thomas, and Congleton misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence." Dkt. No. 1-1 at 7. These representations plainly relate to the "breadth or existence of coverage." *Messersmith*, 10 F. Supp. at 724.

Defendants argue that these allegations are "mere conclusory statements that lack the factual specificity that enable a court to infer that the Plaintiffs have a right to relief against Tailored, Thomas and Congleton." Dkt. No. 8 at 8. The undersigned disagrees. Prior to making this allegation, the Avilas allege that "[o]n or about May 17, 2015," a storm caused substantial structural and exterior damage to the home – in addition to damaging the roof, "ceilings, walls, insulating, and flooring." Dkt. No. 1-1

at 1. The Avilas explain that they then "submitted a claim to Metropolitan against the Policy for Other Structure Damage, Roof Damage, Structural Damage, Water Damage, and Wind Damage to the Property" (the "Water and Wind Damage Policy") for damages "sustained as a result of the storm," and that the claim was ultimately denied. *Id.* at 5. Construing the entire petition in the light most favorable to the Avilas, the Avilas are essentially alleging that their Water and Wind Damage Policy is supposed to cover all of the damages to their home caused by the storm and that, after they filed a claim, each of these specific parties falsely stated otherwise. These factual allegations are sufficient to put Defendants on notice of Plaintiffs' claims.

The undersigned thus concludes that these factual allegations are sufficient for the limited purpose of demonstrating that Plaintiff might possibly succeed on this claim.

B.    The Avilas' state court petition state a claim for violations of Section 541.060(a)(2)(A) of the Texas Insurance Code.

The Avilas also claim that the Non-Diverse Defendants "fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of" their claim even though "liability under the Policy was clear" in violation of Section 541.060(a)(2)(A). *Id.* at 13.

Defendants argue that the Avilas have failed to state a claim because "they do not outline any specific failure to act in good faith, any failure to provide a reasonable explanation of or to fairly investigate the claim, or any specific act that constitutes the alleged unfair and improper behavior by Tailored, Thomas or Congleton." Dkt. No. 8

-26-

at 7.

A review of the Avilas' state court petition suggests otherwise. As explained in more detail above, the Avilas' allegation that "Defendants Metropolitan, MetLife, Tailored, Thomas, and Congleton misrepresented that Plaintiffs' damages were not covered under the Policy, when the loses, in fact, were properly covered" is pleaded with sufficient specificity when reviewing their state court petition in its entirety.

The Avilas also allege several other instances of unfair and improper conduct by the Non-Diverse Defendants that would suggest these parties acted in a reckless or willful manner that could be indicative of bad faith. Among other things, they allege that:

> 1. "On or about May 27, 2015, Thomas conducted a substandard inspection of Plaintiffs' property" that lasted "a mere thirty (30) minutes," Dkt. No. 1-1 at 6;

> 2. Thomas noted some exterior damage "upon inspection" but that these damages were then omitted from his report," *id.* at 5;

> 3. "Congleton failed to throughly review Thomas' assessment of the claim and ultimately approved and/or submitted Thomas' inaccurate report of the damages," *id.* at 7; and that

> 4. "Together, Metropolitan, Metlife, Tailored, Thomas, and Congleton set out to deny and/or underpay on properly covered damages," *id.*

Courts have found allegations that a defendant has successfully stated a claim for violation of Section <u>541.060(a)(2)(A)</u> of the Texas Insurance Code based on substantially similar allegations. *See, e.g., Roach*, 2016 WL 795967, at *7 (finding that the plaintiff stated a claim for violation of Section 541.060(a)(2)(A) based on allegations that the adjuster had 'conduct[ed] a substandard inspection,' 'fail[ed] to include many'

of Roach's damages in his report, [and] 'misrepresent[ed] the cause of, scope of, and cost to repair the damage' to Roach's property, ... [among] other misrepresentations'").

The undersigned thus concludes that these factual allegations are sufficient for the limited purpose of demonstrating that Plaintiff might possibly succeed on this claim.

    C.    The Avilas' state court petition states a claim for violation of Section 541.060(a)(7) of the Texas Insurance Code.

The Avilas also allege that the Non-Diverse Defendants violated Section 541.060(a)(7). The Avilas contend that the Non-Diverse Defendants failed to conduct a reasonable investigation before the insurer partially denied their claim.

The Avilas' contentions are supported by specific factual allegations concerning the inadequacy of the investigation. The Avilas allege that Thomas' report on the damages to the Property failed to include some of the exterior damage Thomas observed during his 30 minute inspection of the Property and "undervalued the cost of repairs to the damaged items that he did include." Dkt. No. 1-1 at 6. They further allege that Congleton failed to thoroughly review Thomas' assessment, that Metropolitan, Metlife, Tailored, Thomas, and Congleton each misrepresented that Plaintiffs' damages were not covered, and that they "were considerably underpaid on their claim" as a result. Dkt. No. 1-1 at 6-7.

The undersigned thus concludes that these factual allegations are sufficient for the limited purpose of demonstrating that Plaintiff might possibly succeed on this claim.

     D.     Finally, the Avilas' state court petition states a claim for violation of <u>Section 541.060(a)(3) of the Texas Insurance Code.</u>

Section 541.060(a)(3) requires persons involved in the business of insurance to "provide to a policyholder a reasonable explanation for the basis, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of claim." TEX. INS. CODE § 541.060(a)(3).

The Avilas argue that the Non-Diverse Defendants violated this provision because they, with the other Defendants, "failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being paid." Dkt. No. 1-1 at 9. These allegations are sufficiently detailed when viewing the state court petition as a whole in the light most favorable to the Avilas. The Avilas essentially allege that the Non-Diverse Defendants have never explained why their claim was denied with respect to several specific types of damages to their home. As discussed more thoroughly above, these damages include the exterior damage Thomas observed but did not include in his report, the damage Thomas may have missed in a 30 minute substandard inspection of their residence, and the cost of repairs which were undervalued in Thomas' report. These allegations are sufficient given the nature of the Avilas' claims. The Avilas plainly cannot identify specific issues with Defendants' explanation when they allege that the Non-Diverse Defendants did not provide them with any explanation at all.

The undersigned thus concludes that these factual allegations are sufficient for the limited purpose of demonstrating that Plaintiff might possibly succeed on this

claim.

      E.    <u>The Non-Diverse Defendants were thus properly joined in this action.</u>

As stated, "even a single valid cause of action against [non-diverse] defendants, despite the pleading of several unavailing claims, requires remand of the entire case to state court," *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). The Avilas have stated a claim for multiple violations of Section 541.060(a) of the Texas Insurance Code, at least for the purposes of this motion.

As such, the undersigned concludes that the Non-Diverse Defendants have not been improperly joined and that the case should be remanded.

VI.    **Plaintiffs should not be awarded their attorneys' fees and costs incurred as a result of the removal.**

Plaintiff do not seek their attorneys' fees and costs incurred for obtaining a remand of this action to state court pursuant to 28 U.S.C. § 1447(c). *See* Dkt. No. 6. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). Bad faith is not "a prerequisite to awarding attorney fees and costs." *Id.* (citation omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted). In this regard,

the court must decide "whether the defendant had objectively reasonable grounds to believe the removal was legally proper" at the time of removal, "irrespective of the fact that it might ultimately be determined that removal was improper." *Valdes*, 199 F.3d at 293.

Although the law regarding diversity of citizenship and improper joinder is settled, as laid out above, the law regarding Plaintiffs' claims is less well established, and the undersigned recommends that the Court conclude that, although incorrect, Defendants had objectively reasonable grounds to remove this action. Plaintiff is, therefore, not entitled to recover its reasonable attorneys' fees and costs incurred for the removal of this action to federal court.

## Recommendation

The undersigned concludes that the Court should grant Plaintiffs' Motion to Remand [Dkt. No. 6] and remand this action to the County Court at Law No. 2, Kaufman County, Texas from which it originated.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

-31-

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: February 21, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE